[No. 19649.   Department One.   June 16, 1926.]

CENTRALIA LABOR TEMPLE ASSOCIATION, *Appellant,* v. W. F. O'DAY, *et al., Respondents.*[1]

[1] EVIDENCE (2)—JUDICIAL NOTICE—MATTER OF COMMON KNOWL- EDGE. The court will take judicial notice that Samuel Gompers was head of the American Federation of Labor.

[2] TRADE UNIONS (2)—DISSOLUTION—PROPERTY AND FUNDS. Where it appears that a new council of the American Federation of Labor is the successor of an old council, a telegram from the head of the Federation recognizing the council is confirmation of the fact.

[3] SAME (2). Where an old council of the American Federation of Labor had no quorum and failed to pay its dues, and the parent body had issued a new charter, the courts will not in- quire into the power of the parent body to revoke the old charter without a hearing, in an action which was not between the old council and the parent body.

[4] SAME (2). Trust funds raised by an old council of the American Federation of Labor for the purpose of erecting a labor building are properly paid over to the new council, char- tered by the Federation when the old council ceased to func- tion, where the fund was raised and paid to the council while it was affiliated with the Federation and because of such affilia- tion.

Appeal from a judgment of the superior court for Lewis county, Abel, J., entered July 25, 1925, upon find- ings in favor of the defendants, in an action to de-

¹Reported in 246 Pac. 930.

termine the right to trust funds, tried to the court. Affirmed.

*L. B. Sulgrove,* for appellant.

*C. D. Cunningham* and *Forney & Ponder,* for respondents.

ASKREN, J.—In 1918, the Central Labor Council of Lewis county and vicinity was organized as a voluntary association. To distinguish it from other parties to this controversy, we shall refer to it hereafter as the old council.

This organization adopted a constitution and by-laws, was affiliated with, and received its charter from, the national organization known as the American Federation of Labor. W. F. O'Day, one of the respondents herein, was treasurer of this body for a number of years.

During the existence of this old council, a fund was raised for the purpose of building a labor temple. The fund was acquired from many sources, including subscriptions from appeals to different labor unions and individuals. The funds received for the purpose of building a labor temple were held by O'Day and carried on the books of the council as a labor temple fund, being separated from the general funds of the council.

In violation of the terms of the constitution, the old council admitted, from time to time, delegates from certain organizations which were not affiliated with the American Federation of Labor. The old council, apparently, ceased to function in the early part of 1923, by reason of the fact that so many delegates were withdrawn, leaving insufficient delegates to transact business as required by its constitution. Article VI, § 1, requires that seven members, representing five organi-

zations, shall constitute a quorum for the transaction of business.

In March, 1923, there was organized the Twin City Central Labor Union of Chehalis and Centralia, which will be hereafter called the new council. This new council became affiliated with, and was duly chartered by, the American Federation of Labor.

In April, 1923, the appellant corporation, known as the Central Labor Temple Association, was formed, its purpose being to build a labor temple in Centralia. Respondent O'Day was treasurer of the Labor Temple Association. In May, 1923, there were only two labor unions affiliated with the American Federation of Labor in good standing in the old council. A meeting was held and a resolution passed ratifying the turning over of the fund, which had been raised for temple purposes, to the Labor Temple Association. Thereafter, O'Day was recalled as treasurer of the Labor Temple Association. Demand was made upon him for the payment to the Labor Temple Association of the funds in his hands, and which had formerly been in the hands of the old council, but he refused to deliver the same, because of the demand of the new council that the funds be delivered to it.

This action was then commenced by the Labor Temple Association to require O'Day to turn over the funds in his hands, amounting to approximately one thousand dollars. The new council intervened, and the cause proceeded to trial. The court, after hearing the testimony, held that the fund in question was a trust fund, to be used for labor temple purposes; that the old council had failed to comply with the laws of the American Federation of Labor, and its charter had been forfeited by it; that, when the new council was formed with the approval and under the charter of the

American Federation of Labor, it became entitled to the possession of this trust fund, to be used for trust purposes for which it was contributed.

Upon appeal, the Labor Temple Association, appellant, has assigned a large number of errors. It is urged that the old council never became dissolved, and that, therefore, the new council was not a successor to the old one. Under the policy of the American Federation of Labor, but one regularly chartered body affiliated with it is permitted in a county, and it is not contended here, by either side, that there may be two legally chartered bodies, such as these in Lewis county. It clearly appears that the old council did not, at the time of its attempted passage of the resolution to transfer the fund in question to appellant, have a quorum to transact business, as required by its constitution. It is, also, equally apparent that the national organization either forfeited the charter of the old council or considered it as dissolved, for it issued a charter to the new council. The testimony also showed that, some time thereafter, there was an attempt upon the part of the old council to pay dues to the national organization, and it was refused upon the ground that a new charter had already been issued. The constitution of the old council provided that the officers should take an obligation, providing in part:

"   . . . . and should the council cease to work will deliver all property to any person or persons authorized by the Central Labor Council of Lewis County and vicinity, or by the American Federation of Labor."

It is said, that there was no showing that the American Federation of Labor had authorized the payment of these funds to the new council. There was offered in evidence a telegram, which read as follows:

"When the Central Labor Council of Centralia failed to perform its financial obligations to the American

Federation of Labor small as these requirements were it forfeited its charter issued to it by the American Federation of Labor and all rights and privileges provided in the charter as well as the constitution of the Federation subsequently there was formed the twin city Central Labor Union composed of the bona fide unions of Chehalis and Centralia upon application for the same charter was issued by the American Federation of Labor to said twin city Labor Union of Chehalis and Centralia and all moneys rights property books and all other things of value formerly belonging to the Central Labor Council of Centralia are required to be turned over to the twin city Central Labor Union of Chehalis and Centralia for the use and for the benefit of said twin city Central Labor Union to be used for the benefit of the movement to improve the standards of Life work and citizenship of the Wage earners of Centralia and Chehalis.

"(Signed) SAMUEL GOMPERS."

At the time of the introduction of the telegram, it was objected to on the ground that it was incompetent, irrelevant and immaterial. No objection was made on the ground of lack of authenticity.

[1] It is said that this court cannot take judicial notice of the fact that Samuel Gompers was the head of the American Federation of Labor. But we think that we are required to take judicial notice of this fact. Courts will not refuse to know that which everyone knows as a matter of common knowledge.

[2] It is said that, even if it be admitted that Samuel Gompers was the head of the American Federation of Labor at the time the telegram was sent, the contents thereof amount to no more than his construction of the rights of the parties, and do not show that any action was taken by the national organization. Assuming this to be true, the telegram from the executive head of that organization is, at least, confirmation of the fact that the charter of the old council

was considered by the American Federation of Labor as being revoked, and that it makes no claim that the funds should be sent to it direct, but that they should be delivered to the new council.

We think it unnecessary to here determine the legal valuation of this telegram, since we are satisfied that the new council is the successor of the old council, and, as such, entitled to the possession of the money and property held in its hands, or under its control, at the time it ceased to function.

[3] An elaborate argument is presented, upon the question of the right of the American Federation of Labor to revoke the charter of the old council. It is said that its charter may not be revoked, except after hearing. It must be borne in mind that this is not an action between the parent body and the old council, whereby it is sought to revoke a charter, but is an action in which the old council claims that, at the time it disposed of the trust fund in question, it was a functioning body, in spite of the evidence which shows that it had not the required quorum; that it had failed to pay its dues, and the parent body had already issued a new charter. We think this is sufficient to show that the charter of the old council had been revoked, and we will not inquire, in this proceeding, whether the parent body had sufficient grounds for its revocation or not.

[4] It is further claimed that the fund in question was not in any sense the fund or property of the old council within the meaning of the constitution, which required the property to be delivered to someone designated by the old council, or the American Federation of Labor; that it was a trust fund, which the American Federation of Labor had no control over. We cannot assent to such a view. This fund was raised and paid

into the organization at a time when it was affiliated with, and chartered by, the American Federation of Labor. Those who contributed thereto undoubtedly did so, because they knew that the disposition of the funds would be made in the interest of those who were in sympathy with the purposes and aims of the parent body. There is some evidence in the record to indicate that the appellant corporation is controlled by those who are inimical to the American Federation of Labor, and the court made such a finding. This is attacked by appellant upon the ground that the evidence does not justify the finding. We think it not necessary here to determine this question. It is sufficient to say that the donors of this fund have a right to require that it shall be disbursed under the authority of that organization, or a subordinate council legally chartered by it. It may safely be assumed that, if so, it will be disbursed in accordance with the purpose for which the subscriptions were made.

Many of the cases cited by appellant become unimportant, in view of our decision as to the facts which are controlling.

We find no error in the holding of the trial court, that the fund in question should be delivered to the new council, and its judgment is therefore affirmed.

Tolman, C. J., Holcomb, Fullerton, and Bridges, JJ., concur.